| Philippe Theroux<br>vs.<br>Bruno Parenteau | No. 80031. |
| --- | --- |

| Leonidas Parenteau<br>vs.<br>Bruno Parenteau | No. 80032. |
| --- | --- |

| Amanda Parenteau<br>vs.<br>Bruno Parenteau | No. 80033. |
| --- | --- |

| Leonidas Parenteau<br>vs.<br>Bruno Parenteau | No. 80231. |
| --- | --- |

October 3, 1930.

FROST, J. Heard on motions for new trials filed by plaintiffs after verdicts for defendant.

These four cases, all against the same defendant, were tried together by agreement of counsel. All arose from an automobile accident which occurred just before midnight on July 13, 1928, on the West Shore Road, in or near the Village of Conimicut. The defendant on the evening in question drove his machine a Hudson Brougham, from his home in Woonsocket to Oakland Beach. With him, at his invitation, were his brother-in-law, Philippe Theroux, who sat on the front seat to his right, his brother, Leonidas. who sat on the extreme right of the rear seat, Leonidas' wife, Amanda, on the middle of the rear seat, and Dora Parenteau, Bruno's wife, on the extreme left of the rear seat. After spending considerable time at the Beach they started for home and had just passed through the more thickly settled portion of the village when Bruno Parenteau, blinded momentarily by the lights of an approaching automobile, swerved somewhat to his right, went a short distance and struck a tree by the roadside, thereby causing serious injuries to himself, his wife, Leonidas' wife and Theroux. Without describing the injuries in detail it is enough to say that the injuries suffered by the plaintiffs in these cases were sufficiently serious to justify a jury in awarding damages

more or less substantial in the event that liability was proved.

In each case the plaintiff filed a motion for new trial on several grounds, including that of newly discovered evidence, and has supported the last ground with affidavits of newly discovered evidence.

The testimony showed that it had begun to rain before the machine driven by Parenteau reached Conimicut; that it was raining with considerable force at the time of the accident; that the road was very wet; that West Shore Road at that time had a tar macadam surface, twenty-four feet in width with shoulders of gravel beyond, which had been oiled; that to the left of the main highway and joining it at approximately a right angle was a side street; that about fifty feet southerly of the side street, which came into West Shore Road on the westerly side, was a tree which was three and four-tenths feet from the easterly edge of the metal surface, so-called.

Parenteau was proceeding northerly on West Shore Road at a speed variously estimated at from 25 to 40 miles per hour. When from 150 to 250 feet southerly of the side street just mentioned he saw the lights of an automobile. This machine at that time was at the end of the side street or just coming into the main road. The machine turned southerly, apparently making a wide turn and in so doing encroached considerably upon the easterly portion of the metal surface and upon that portion of the highway which would be used by a machine going northerly. Theroux testified that when he first saw the lights of the other machine the space between the two cars was about 150 feet and that as the machine turned to go in a southerly direction the lights blinded Parenteau. The latter then turned to his right a little, went along straight and then into the tree; that about 10 or 15 feet from the tree he put on the brakes. It did not appear that Parenteau's machine at any time skidded by reason of the wet pavement. Parenteau himself testified that he applied all of his brakes at once and when he was 15 or 20 feet from the tree. The testimony was somewhat conflicting as to whether the windshield was broken and as to the force with which the automobile struck the tree, but the fact that Mrs. Bruno Parenteau suffered a broken leg, Theroux, a broken arm, and the driver, a dislocated hip, offered some evidence that the impact was reasonably severe.

Regardless of the speed at which Parenteau had been traveling, what was his duty when blinded by the lights of the oncoming machine? Upon this question counsel for the plaintiffs has submitted three cases.

In *Hammond* vs. *Morrison* (N. J. 1917) 100 Atl. 154, it appears that an accident occurred near midnight at the crossing of Broadway with tracks of New York, Susquehanna and Western R. R. Co. in the City of Paterson. The street lights were reflected into the driver's eyes by the windshield of his automobile and he was unable to see in front of him. This temporary blindness caused him to collide with an electric car and to crush the operator who was on the ground in the rear of the car adjusting the trolley. There was a verdict for the defendant. The Chief Justice held that the verdict could not be sustained, saying, "When his vision is temporarily destroyed in the way which the defendant indicated, it is his duty to stop his car, and so adjust his windshield as to prevent its interfering with his ability to see in front of him. The defendant, instead of doing this, took the chance of finding the way clear, and ran blindly into the trolley car behind which the decedent was standing."

In *Cole* vs. *Wilson* (1928), 127 Me. 316, 143 Atl. 178, the defendant was driving on the highway about 10 P. M. There was considerable traffic on the

road. The night was foggy and defendant's windshield was covered with moisture and defendant was blinded by approaching lights and also by lights from the rear playing upon his windshield. He failed to see plaintiff, who was walking on the edge of the highway, and injured her. In sustaining a verdict for the plaintiff, the Court said, "If the operator of a machine is blinded by the light from another vehicle so that he is unable to distinguish an object in front, reasonable care requires that he bring his vehicle to a stop and a failure to do so justifies a charge of negligence."

In *House* vs. *Ryder*, Me. (1930), 150 Atl. 487, it appears that defendant while driving a machine about 8 P. M. was blinded by the headlight of an electric car and struck a pedestrian. The Court held that a motorist blinded by the headlight of an electric car must not recklessly proceed on his way under circumstances of doubt but must know, or failing to know, should bring his car to a stop.

While the Court does not question the soundness of the law as applied in these cases, it seems clear that no hard and fast rule can be laid down respecting the duty of a motorist who may be blinded by lights on the highway. In a busy urban thoroughfare safety might dictate an absolute and immediate stop, while in a country highway reasonable safety might not require stopping but only slowing down and possibly not that. The time of night, the nature and density of traffic, the likelihood of pedestrians being on the highway are all factors to be taken into consideration. In the instant case the accident happened late at night; there was little traffic on the highway. The Court cannot say that Parenteau failed to act as a reasonably prudent man would do under like circumstances when he swerved to his right to avoid a machine that appeared to be coming in his path and he could

not reasonably anticipate that the authorities of the town would allow a tree to remain, without distinguishing marks of any kind, within three feet and one-half of the edge of the metal surface of the road. Theroux, who was on the front seat, testified that the speed of Parenteau's machine was 25 miles per hour. At what speed the mythical reasonably prudent man would drive under the circumstances that obtained at the time and place of the accident is no where stated in the law, but in these days when practically every juryman operates a machine, it would seem that the conclusions of the jury should be of value. The space between the point where Parenteau swerved to his right and the place where the tree stood was evidently very short.

The Court, after reading the transcript of testimony in this case, furnished through the courtesy of counsel, cannot say that the result reached by the jury is against the clear weight of the evidence and in its opinion the verdict of the jury does substantial justice between the parties.

See *Aubin* vs. *Duluth Street Railway Co.* et als. (1926), Minn. 211, N. W. 581.

The plaintiffs have severally filed affidavits tending to show through the condition of the automobile after the accident that the impact when the machine struck the tree was severe. It may well have been, but this evidence is only cumulative of that given at the trial and it would seem that the condition of the automobile after the accident might easily have been discovered had counsel considered it particularly essential.

The motions for new trials are severally denied.

For plaintiffs: Greene, Kennedy & Greene.

For defendant: McGovern & Slattery.